**COMMONWEALTH of Pennsylvania,**
**Appellee.**

v.

**Raymond M. KENT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 25, 2002.

Filed April 22, 2002.

Raymond M. Kent, appellant, pro se.

Bradley H. Foulk, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before: JOHNSON, KLEIN and BROSKY, JJ.

KLEIN, J.

¶ 1 Raymond M. Kent appeals from the order denying his petition under the Post-Conviction Relief Act (PCRA) 42 Pa.C.S. §§ 9541–9546. We remand for appointment of counsel and grant Kent leave to file his direct appeal *nunc pro tunc* within thirty days of appointment of counsel.

¶ 2 Kent raises a number of issues on appeal, but we need only address one. Kent claims he was denied counsel on direct appeal and, as a result, he lost his direct appeal rights. A brief recitation of the facts is in order.

¶ 3 Evidence indicated Kent and his sister had some beers and smoked crack cocaine on the night of the incident. While later driving around Erie, Kent claimed he had to go to the bathroom. He pulled off the road to a sheltered location near some woods. While at this location, he pulled his sister out of the car and into the woods. He then removed her clothes, tied her hands behind her back, and tied her legs to different trees. As a result of intoxication and being choked, his sister moved in and out of consciousness. At one point she awoke to find her brother performing oral sex on her.

¶ 4 Kent eventually left the scene, leaving his sister tied in the woods. She eventually worked her way free, put her clothes back on, flagged down a passing motorist and summoned the police. Ligature marks were noted on her wrists and around her neck.

¶ 5 Kent, on the other hand, testified that the activity between he and his sister was wholly consensual and was part of a long-standing physical relationship between them. He claims he tied his sister in preparation for sex at her suggestion. At some point, prior to her being totally bound, Kent claims his sister wanted more crack. He claims he untied her, she then got redressed, but she didn't want to go back downtown, so she gave him fifty dollars and waited in the woods for him to return with the drugs. Kent claimed she later complained only because he took so long in returning to the scene.

¶ 6 While awaiting trial, Kent wrote a number of letters to his sister, apologizing and asking her to save him from prison by testifying the sexual contact between them had been consensual. These letters were admitted into evidence.[1]

¶ 7 After hearing the evidence, the jury deliberated for parts of two days and convicted Kent on three of the four counts charged. Kent was convicted after a jury trial of Involuntary Deviate Sexual Intercourse, Simple Assault and False Imprisonment[2]. He was sentenced to a total of five and one-half to twenty years imprisonment, followed by four years probation and costs and fines.

¶ 8 One week after sentencing, and before an appeal was filed, Kent filed a series of *pro se* motions, including a motion to dismiss his counsel, a member of the public defender's office. At the same time, counsel filed a motion to withdraw as counsel. Both Kent and his counsel asserted they had irreconcilable conflicts with respect to the case. At the hearing on this motion, Kent told the court he felt counsel had

---

1. Counsel had carefully redacted the letters to remove potentially prejudicial references. Kent himself later requested the jury be allowed to view the letters in entirety.

2. 18 Pa.C.S. §§ 3123, 2701 and 2903 respectively.

been ineffective and requested new counsel. The trial court told Kent he was not entitled to new counsel, could not pick and choose his counsel from the Public Defender's Office and could either keep the Defender's Office[3], hire private counsel, or proceed *pro se*. At no time was Kent offered appointed counsel outside of the defender's office. Truly, Kent was presented with a Hobson's choice[4].

¶ 9 Kent opted for *pro se* representation, stating: "I consider this free counsel a hindrance to my defense." and "I'm not an attorney and I'm willing to represent myself because I have no other choice." Kent was then transferred to S.C.I. Frackville, where, he alleges he was unable to obtain library privileges until after his appeal period expired.

¶ 10 Kent then filed a petition under the PCRA. Counsel was appointed to represent him and an amended petition was filed.

■ ¶ 11 It is fundamental that an accused has a constitutional right to counsel on direct appeal. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and *Commonwealth v. Robinson*, 452 Pa.Super. 606, 682 A.2d 831 (1996). Here, it is clear from reading the record that Kent wanted counsel for his direct appeal. What he did not want was the assistance of the Public Defender's Office, which he alleged had been ineffective in representing him at trial. The trial court was correct in its assertion that an accused does not generally have the right to pick and choose his counsel. *Commonwealth v. Siers*, 318 Pa.Super. 215, 464

A.2d 1307 (1983). However, the court overlooked the fact that a Public Defender's Office cannot raise its own ineffectiveness on appeal. *Commonwealth v. Ciptak*, 542 Pa. 112, 665 A.2d 1161 (1995); *Commonwealth v. Shannon*, 530 Pa. 279, 608 A.2d 1020 (1992). Thus, the court gave Kent no real choice when it offered him continued representation by the Public Defender's Office or *pro se* representation[5]. It cannot be said that Kent's decision to forego representation by an office that was forbidden to represent him was a knowing, intelligent and voluntary waiver of counsel for his appeal. As such, Kent was deprived of his constitutional right of counsel. The deprivation of the right to counsel can never be harmless. *Commonwealth v. Payson*, 723 A.2d 695 (Pa.Super.1999).

¶ 12 As a result of the violation of Kent's right to counsel, we have no choice but to remand for appointment of counsel and to reinstate Kent's right to file a direct appeal, *nunc pro tunc*. *Commonwealth v. Champney*, 783 A.2d 837 (Pa.Super.2001). The appeal is to be filed within ninety days of appointment of counsel. Said appeal may encompass any and all colorable claims, including those of ineffective assistance of counsel. It should be noted that we are not commenting upon the merit, or lack thereof, of any other issue Kent has raised or might possibly raise in his direct appeal. We find that Kent was improperly denied his right to counsel and is currently entitled to reinstatement of his direct appellate rights.

¶ 13 Accordingly, we reverse the order below and reinstate Kent's right to a direct

---

3. Had Kent chosen to continue representation through the Defender's Office, a different Public Defender would have been appointed to represent him.

4. This or nothing. Depending upon reference, named after Thomas or Tobias Hobson, Innkeeper/Stablemaster in Cambridge, Britain who offered customers the choice of the horse nearest the stable door or none at all.

5. The choice of private counsel was illusory as *Kent* is indigent.

appeal, *nunc pro tunc*. We remand the case for the PCRA court to determine whether present PCRA counsel should prosecute Kent's direct appeal or whether new counsel should be appointed. Thereafter, counsel should perfect an appeal within 30 days of the determination below.

¶ 14 Order reversed. Case remanded. Jurisdiction relinquished.